### Don P. GREENBERG, M.D.

v.

### Oliver B. TOMLIN and Home Health Systems, Inc.

### Robert B. BREWSTER

v.

### Oliver B. TOMLIN and Home Health Systems, Inc.

### Donald H. LIEBERMAN, M.D.

v.

### Oliver B. TOMLIN and Home Health Systems, Inc.

Civ. A. Nos. 92–CV–0006, 92–0012, 92–0011.

United States District Court, E.D. Pennsylvania.

March 11, 1993.

Joel W. Todd, Stephen W. Edwards, Dolchin, Slotkin & Todd, P.C., Philadelphia, PA, Dana Pirone Garrity, Dolchin, Slotkin & Todd, Cherry Hill, NJ, for plaintiff.

Teresa N. Cavenagh, Michael M. Mustokoff, Duane, Morris & Heckscher, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

These consolidated actions are once again before the Court for consideration and disposition of the Defendants' Motions for Partial Summary Judgment in their favor with respect to those Counts in the Plaintiffs' complaints which seek recovery of monetary damages and an accounting under theories of fraud, misrepresentation, breach of contract, civil RICO and estoppel. In the case of Plaintiff Donald H. Lieberman, M.D., Defendants also move for summary judgment with respect to Count IV of his complaint charging Defendants with breach of a separate oral agreement. For the reasons delineated in the paragraphs which follow, the motions are granted in part and denied in part.

## I. *FACTUAL SUMMARY OF THE CASE*

In essence, each of these cases arose in the summer and fall of 1991 when Plaintiffs Donald P. Greenberg, M.D., Donald H. Lieberman, M.D. and Robert Brewster were successively terminated, ostensibly "for cause" from their respective employment relationships with the Defendants. According to the allegations contained in the amended complaints, beginning in 1986, Defendant Oliver Tomlin and one Augustus Robbins, acting as officers and agents of the defendant Home Health Systems, Inc. ("HHS") contacted and actively recruited Dr. Greenberg, Dr. Lieberman and Mr. Brewster to act as "point men" for HHS by soliciting and obtaining physician investors for numerous limited partnerships to be developed by Defendants primarily in the areas of New Jersey, Pennsylvania, Northern Virginia, Maryland and Washington, D.C. In exchange, the Plaintiffs were to receive monthly base salaries, fringe benefits, expense allowances, bonuses and stock options in various amounts together with eq-

uity interests in the corporations which were to become the general partners of the limited partnerships which each Plaintiff would be "selling." To this end, all three Plaintiffs negotiated and entered into written employment agreements with HHS. At various times between the commencement of their employment relationships with HHS, each Plaintiff's agreement was modified in writing by the parties.

From all appearances, the thrust of all of the Plaintiffs' complaints involves the alleged intentional failure of the Defendants to meet their obligations under the employment agreements by not paying Plaintiffs the wages and cash distributions due them from their ownership/equity interests and not issuing optioned stock. In addition, Plaintiffs contend that although Oliver Tomlin had told them at the negotiations stage that the amount of expenses to be charged to the corporate general partners would essentially be limited to outside legal and accounting fees, in reality, Tomlin and HHS charged numerous expenses over and above the outside legal and accounting costs that had been discussed thus significantly reducing the overall profits of the general partners.

For their part, Defendants now assert that inasmuch as the parties' depositions, interrogatory answers and affidavits reveal no outstanding issues of material fact, they are entitled to the entry of judgment in their favor as a matter of law on all of Plaintiffs' claims with the exception of their claims that they were improperly terminated from their employment with HHS in breach of their written employment contracts. The parties have briefed and the motion was orally argued on January 12, 1993 and the matter is therefore now ripe for disposition.

## II. DISCUSSION

### A. STANDARDS GOVERNING THE ENTRY OF SUMMARY JUDGMENT

■ The legal standards and principles to be followed by the district courts in resolving motions for summary judgment are clearly set forth in Fed.R.Civ.P. 56. Subsection (c) of that rule states, in pertinent part,

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this way then, a motion for summary judgment dictates that a court must look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). *See Also: Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y.1990).

■ As a general rule, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the party opposing the motion and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa. 1991); *Schillachi v. Flying Dutchman Motorcycle Club,* 751 F.Supp. 1169 (E.D.Pa. 1990).

■ This is not to say, however, that a non-movant may rest upon the allegations contained in his or her pleadings in defense of a summary judgment motion. *See: Allen v. Denver Public School Board,* 928 F.2d 978 (10th Cir.1991). Indeed, F.R.C.P. 56(e) provides:

"When a motion for summary judgment is made and supported as provided for in this

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

In other words, the burden of demonstrating the absence of genuine issues of material fact is initially on the moving party regardless of which party would have the burden of persuasion at trial. Following such a showing, the non-moving party must present evidence through affidavits or depositions and admissions on file which comprise of a showing sufficient to establish the existence of every element essential to that party's case. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 321–325, 106 S.Ct. at 2552–2553; *Keyes v. National Railroad Passenger Corp.,* 756 F.Supp. 863 (E.D.Pa.1991); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990).

### B. PLAINTIFFS' RICO CLAIMS

In this case, the Plaintiffs have raised claims under Sections 1962(b), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961, *et seq.* Indeed, Section 1964(c) permits "any person injured in his business or property"

by reason of a section 1962 violation to bring a civil suit to recover therefor in any appropriate United States District Court. According to Section 1962(b), it is unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain ... any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Under Section 1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of an unlawful debt."[1] Finally, under Section 1962(d), it is unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c).

Not surprisingly, case law has established separate requirements for certain subsections. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3rd Cir.1991). To obtain civil relief under § 1962(b), a plaintiff must establish that the defendant had an interest in or control of any enterprise which affects interstate or foreign commerce and that a specific nexus existed between control of a named enterprise and the alleged racketeering activity. *Kehr Packages v. Fidelcor, Inc., supra,* 926 F.2d at 1411; *Martin v.*

---

1. Section 1961 defines, *inter alia,* the terms "racketeering activity," "person," "pattern of racketeering activity" and "enterprise" in the following manner:

(1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code:.... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud),.... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, con-

cealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act;

. . . . .

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

*See Also: Pagnotti Enterprises, Inc. v. Beltrami,* 787 F.Supp. 440, 444 (M.D.Pa.1992).

*Brown,* 758 F.Supp. 313, 318 (W.D.Pa.1990). Furthermore, it is incumbent upon the plaintiff to make a showing of injury from the defendant's acquisition or control of an interest in a RICO enterprise in addition to injury from the predicate acts themselves. *Casper v. Paine Webber Group, Inc.,* 787 F.Supp. 1480, 1494 (D.N.J.1992). *See Also: Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Authority,* 767 F.Supp. 672 (E.D.Pa. 1991); *Berk v. Ascott Investment Corp.,* 759 F.Supp. 245 (E.D.Pa.1991).

To recover under Section 1962(c), the following four elements must be proven: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise and (4) that defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989); *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1352 (5th Cir.1985). What's more, it has repeatedly been held that since § 1962(c) requires a finding that the defendant "person" conducted or participated in the affairs of an "enterprise" through a pattern of racketeering activity, the "person" charged with a violation of § 1962(c) must be separate and distinct from the "enterprise." *Brittingham v. Mobil Corporation,* 943 F.2d 297, 300 (3rd Cir.1991); *Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633–634 (3rd Cir.1984).

Finally, to make out a claim under § 1962(d), a plaintiff must set forth allegations and produce evidence which addressed the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Additionally, there should be proof that defendants agreed to commit the predicate acts and that they knew the acts were part of a pattern of racketeering activity. *Glessner v. Kenny,* 952 F.2d 702, 714 (3rd Cir.1991); *Shearin v. E.F. Hutton Group,*

*Inc., supra,* at 1166. *See Also: Rose v. Bartle,* 871 F.2d 331, 366 (3rd Cir.1989).

A threshold requirement to successfully obtaining damages under *any* subsection of 1962 is the demonstration that a pattern of racketeering activity existed. To ascertain whether a pattern of racketeering activity has been established, the court must from the outset determine whether the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Kehr Packages Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1412 (3rd Cir.1991). It should be noted that continuity has been said to be both a closed and open-ended concept referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time *or* by demonstrating that a threat of continuing criminal activity exists. *H.J., Inc. v. Northwestern Bell Telephone Co., supra,* 492 U.S. at 2, 109 S.Ct. at 2902; *Hindes v. Castle,* 937 F.2d 868, 872 (3rd Cir.1991).

In assessing whether a sufficient showing of continuity and relatedness has been made, a court may consider such factors as: (1) the number of related acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *Barticheck v. Fidelity Union Bank/First Nat. State,* 832 F.2d 36, 39 (3rd Cir.1987). Similarly, threatened criminal conduct can also be established by showing that "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Kehr Packages, Inc. v. Fidelcor, Inc., supra,* 926 F.2d at 1412.

Finally, in evaluating the issue of relatedness, the court should look to see if the alleged predicate acts are interrelated by distinguishing characteristics and are not merely isolated events. *Rose v. Bartle, su-*

*pra,* 871 F.2d 331, 364 (3rd Cir.1989). In this regard, it has been held that predicate acts are related if they "have the same or similar purpose, results, participants, victims or methods of commission." *United States v. Pelullo,* 964 F.2d 193, 207 (3rd Cir.1992), citing *H.J., Inc. v. Northwestern Bell Telephone Co., supra,* 492 U.S. at 240, 109 S.Ct. at 2901.

### 1. *Pattern of Racketeering Activity*

By way of the motion which is now before the Court, Defendants preliminarily assert that the record in the case at bar clearly evinces that Plaintiffs cannot establish the Defendants' involvement in the requisite pattern of racketeering activity and that, as a consequence, judgment must be entered in favor of the defense on *all* of the Plaintiffs' RICO claims. We disagree.

According to the amended complaints, the Plaintiffs' RICO actions are premised upon the Defendants' purported mailings of allegedly fraudulent tax documents, financial statements and numerous oral misrepresentations made to Plaintiffs over the telephone and transmitted through the U.S. Mail.

The offenses of mail and wire fraud are broadly defined in 18 U.S.C. at Sections 1341 and 1343 respectively. Those sections state:

### § 1341. **Frauds and swindles**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretense, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or received therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

### § 1343. **Fraud by wire, radio, or television**

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

In general then, the mail and wire fraud statutes require, *inter alia,* a showing of intentional fraud. Thus it may be said that there are two elements of a mail or wire fraud charge: (a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme. *Messinger v. United States,* 872 F.2d 217, 221 (7th Cir.1989). To withstand challenge, an indictment need only include those facts and elements which are necessary to state an offense and enable the defendant to prepare a defense and invoke the double jeopardy clause as a bar to a subsequent prosecution for the same conduct. *United States v. Dempsey,* 768 F.Supp. 1256, 1263 (N.D.Ill.1990) citing, *inter alia, Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Stated otherwise, a scheme or artifice to defraud need not be fraudulent on its face but must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. For this reason, it may be possible to satisfy the mailing [or wiring] element through materials which

were otherwise "completely innocent." *Kehr Packages v. Fidelcor, Inc., supra,* at 1415 citing, *Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989) and *United States v. Pearlstein,* 576 F.2d 531, 535 (3rd Cir.1978). *See Also: United States v. Pelullo, supra,* at 212; *United States v. Zauber,* 857 F.2d 137 (3rd Cir.1988); *United States v. Johns,* 688 F.Supp. 1017 (E.D.Pa.1988).

 Viewing the record evidence produced in the case at bar in the light most favorable to the Plaintiffs, we find that there are numerous issues of material fact remaining over whether Tomlin and Robbins made certain oral representations in person and over the telephone lines to the Plaintiffs concerning how much money they could expect to receive from their equity interests in the general partners, how much and what type of expenses would be charged to the corporate general partners, and whether Plaintiffs appropriately relied on these representations in deciding whether to begin and/or continue to sell the Defendants' limited partnerships. Moreover, while it is undisputed that Dr. Lieberman received an IRS 1099 Form from HHS reporting some $7,368 in income which he did not receive and that he received several checks in varying amounts representing "consulting fees" rather than equity distributions, the circumstances surrounding the issuance and mailing of those documents remains very much in dispute as are the Defendants' reasons and motives therefor.[2] This Court therefore cannot determine from the existing record whether or not these materials were prepared and mailed to further a scheme to defraud the Plaintiffs. For this reason and in light of the fact that Defendants' course of dealings with each of the Plaintiffs was nearly identical and occurred over several years' time, we can reach no other conclusion but that sufficient indicia exists that Defendants may have engaged in a pattern of racketeering activity to submit the issue to a jury for final resolution.

---

2. Specifically, Defendants assert that Dr. Lieberman was properly paid for consulting work and that the 1099 was mistakenly issued as the result of a computer error. The Plaintiffs, on the other hand, contend that Lieberman was receiving distributions from his equity interest in All–Care

### 2. The Individual Claims under Sections 1962(b), 1962(c) and 1962(d)

In addition to their argument that the requisite pattern of racketeering activity element cannot be proven at the trial of this matter, Defendants alternatively argue that the record now clearly reflects that there can be no recovery under either Section 1962(b) or Section 1962(d) of the RICO Act. Specifically, Defendants contend that judgment should now be entered in their favor on Counts II and III of the amended complaints because: (1) there is no nexus between the alleged pattern of racketeering activity and the acquisition or maintenance of control of the enterprise; (2) there was no injury from the acquisition or maintenance of control of the enterprises and (3) the alleged conspiracy was intracorporate.

 Addressing Defendants' last argument first, it is obvious that under the law in this circuit, a corporation cannot conspire with one or more of its employees when those employees are acting in their authorized capacities on behalf of the corporation. *Denison v. Kelly,* 759 F.Supp. 199, 206 (M.D.Pa.1991); *Yancoski v. E.F. Hutton & Co.,* 581 F.Supp. 88, 97 (E.D.Pa.1983). Consequently, the majority rule is that conspiracy cannot lie against the corporate entity for the concerted action of its employees, officers or directors who violate RICO on its behalf. *Northeast Jet Center Ltd. v. Lehigh–Northampton Airport Authority,* 767 F.Supp. 672, 684 (E.D.Pa.1991); *Helman v. Murry's Steaks, Inc.,* 742 F.Supp. 860, 883 (D.Del. 1990).

 At bar, both the pleadings and the record reveal that the foundation for the Plaintiffs' Section 1962(d) claims is the alleged conspiracy between Defendant Oliver Tomlin, Augustus Robbins, IV and the corporate defendant HHS, Inc. As paragraphs 3 and 4, and 48, 53 and 55 of the respective amended complaints set forth, both Tomlin

---

and that the Defendants had issued both the consulting checks and the 1099 in order to obtain more favorable tax treatment for HHS. (See, e.g.: Deposition of Augustus Robbins, 8/27/92, 227–229, 210–213; Deposition of Donald Lieberman, M.D. 9/10/92, 73–75).

and Robbins were employees, officers and agents of Home Health Systems, Inc. and were acting in those capacities at the times they purportedly conspired. Consequently, we must agree with Defendants that Plaintiff will be unable, as a matter of law, to prove a right of recovery under 18 U.S.C. § 1962(d). Summary judgment will therefore be entered in favor of the Defendants on Count III of each of the three amended complaints.

■ Turning next to Defendants' challenge to Count II of the amended complaints, we again note the necessity that a showing be made that a nexus existed between control of the named enterprise(s) and the purported racketeering activity and that injury resulted from *both* the predicate acts themselves *and* the Defendants' acquisition or control of the enterprises. *See: Casper v. Paine Webber Group, supra.* Here, our careful review of the voluminous materials submitted in support of and in opposition to the instant motion, discloses no evidence that Plaintiffs suffered injury from the Defendants' acquisition or maintenance of control over the partnership-enterprise.[3] The motion shall therefore be granted and summary judgment entered in favor of the Defendants with respect to Count II of the amended complaints.

### 3. *Statute of Limitations*

Defendants next contend that insofar as Dr. Lieberman's RICO claims were filed outside of the four-year statute of limitations, they are entitled to the entry of judgment in their favor as a matter of law on those claims. Again, the Court cannot agree.

■ It is well-settled that all civil RICO actions are governed by a four-year statute of limitations and that this limitations period runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed. Thus, where there is further injury to the plaintiff or further predicate acts occur as a part of the same pattern of racketeering activity, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity although the last predicate act need not have resulted in injury to the plaintiff. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924–925 (3rd Cir.1992); *Keystone Insurance Co. v. Houghton,* 863 F.2d 1125 (3rd Cir.1988). In other words, the "last injury discovery rule" under which a claim arises when a plaintiff knows or should have known of his or her injury cannot be applied to a RICO plaintiff whose knowledge of injury arises solely from a single predicate act because the plaintiff may have discovered the injury but not the pattern. Instead, a RICO plaintiff's limitations period must be measured from the time it knew or should have known of the pattern of racketeering activity. *Glessner v. Kenny, supra,* at 706; *Korman v. Trusthouse Forte PLC,* 786 F.Supp. 458, 462 (E.D.Pa.1992).

■ Instantly, while it appears that Dr. Lieberman first became aware sometime in 1987 that Tomlin and Robbins had misrepresented the degree to which additional expenses would be charged to All–Care, the corporate general partner in which he then had an equity interest, the record in this matter is not clear as to how and when he became aware or should have become aware that these alleged fraudulent misrepresentations were part of an over-all *pattern.*[4] (De-

---

**3.** While we can see a connection, however remote, between the making of the alleged misrepresentations and the mailing of the tax and other documents to these Plaintiffs in that perhaps those statements would not have been made nor those documents mailed had it not been for Defendants' having had control over the partnerships, these findings are insufficient in and of themselves to warrant submission of the § 1962(b) claims to a jury under the case law recited above.

**4.** To be sure, the role which Dr. Lieberman was playing in the development and marketing of the limited partnerships between 1986 and 1990 is equally unclear. According to the Defendants, Dr. Lieberman was acting as a consultant, but according to the Plaintiff, he was acting only as an equitable part-owner of All–Care. Indeed, the one thing that is apparent from the record is the fact that Dr. Lieberman did not become an HHS employee until May, 1990. (*See:* Deposition of Donald Lieberman, 9/11/92, pp. 41–72).

position of Donald Lieberman 9/10/92, 71–125).

Accordingly, we cannot grant Defendants' motion for summary judgment as to Dr. Lieberman's remaining RICO claim on the basis of the statute of limitations.

### C. PLAINTIFFS' COMMON LAW CLAIMS

As stated earlier, the Plaintiffs' amended complaints also seek to recover damages from Defendants under theories of breach of contract, fraud, misrepresentation and estoppel. By way of the instant motion, Defendants ask that partial summary judgment now be entered in their favor with respect to these claims as well.

### 1. Applicability of the Parol Evidence Rule to Plaintiffs' Breach of Written Contract Claims

Defendants further argue that the parol evidence rule mandates that summary judgment be entered on those causes of action brought under Plaintiffs' written employment contracts. In this regard, Defendants contend that because their agreements contain so-called integration clauses, the Plaintiffs cannot, as a matter of law, recover damages based on oral promises allegedly made prior to execution of those written contracts. Thus, Defendants contend, those counts of Plaintiffs' complaints which seek an accounting and damages for the breach of Defendants' purported oral representations that the general partners would be charged virtually nothing for expenses and that Plaintiffs would regularly be paid in cash from the profits of their general partners for their respective shares and equity interests in those partners must fail.

It is axiomatic that under Pennsylvania law[5] where the parties to an agreement adopt a writing as the final and complete expression of their agreement, evidence of negotiations leading to the formation of the agreement is inadmissible to show an interest at variance with the language of the written instrument. Alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superceded by that contract. In this way, the effect of an integration clause is to make the parol evidence rule particularly applicable. *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 349, 534 A.2d 115, 117 (1987), aff'd per curiam, 519 Pa. 439, 548 A.2d 1223 (1988), citing, *inter alia, In re Carter's Claim*, 390 Pa. 365, 372, 134 A.2d 908, 912 (1957); *Bardwell v. Willis Company*, 375 Pa. 503, 507, 100 A.2d 102, 104 (1953); *Gianni v. R. Russell & Company*, 281 Pa. 320, 323, 126 A. 791, 792 (1924); *National Cash Register Co. v. Modern Transfer Co.*, 224 Pa.Super. 138, 144, 302 A.2d 486, 489 (1973).

Where, however, a writing does not state fully the entire agreement of the parties, the parol evidence rule has no application. Consequently, an exception to the rule exists when the party seeking to enforce the agreement as written has made admissions that the agreement does not, in fact, constitute the entire agreement between the parties even when it contains an integration clause. *Fountain Hill Millwork Bldg. Supply Co. v. Belzel*, 402 Pa.Super. 553, 587 A.2d 757, 761 (1991); *Giant Food Stores, Inc. v. Marketplace Communications Corp.*, 717 F.Supp. 1071, 1074 (M.D.Pa.1989). Similarly, where a written agreement is ambiguous, parol evidence can be admitted to explain its terms. *Project Development Group, Inc. v. O.H. Materials Corp.*, 766 F.Supp. 1348, 1352 (W.D.Pa.1991).

On the other hand, when a contract is induced by fraud, the injured party has a choice of alternate remedies: he may either rescind the contract or affirm it and maintain an action in deceit for damages. In this regard, it has been said that evidence of fraud in the inducement will suspend the parol evidence rule because fraud prevents formation of a valid contract; thus, no con-

---

**5.** From all appearances, the parties have waived the provisions of paragraphs 12 (in Lieberman and Brewster's) and 13 (in Greenberg's) of the employment agreements which dictate that the agreements be construed and interpreted in accordance with the internal law of Delaware inasmuch as they have invoked Pennsylvania law to support their respective positions.

tract, no parol evidence rule. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investment*, 951 F.2d 1399, 1408 (3rd Cir.1991), citing, *inter alia, Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172, 1175 (1977); *Briggs v. Erie Insurance Group*, 406 Pa.Super. 560, 594 A.2d 761, 765 (1991); *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 406 (3rd Cir.1981).

 Whether a writing is an integrated agreement and, if so, whether the agreement is completely or partially integrated are questions to be decided by the court prior to application of the parol evidence rule. *McGuire v. Schneider, Inc.*, *supra*, 534 A.2d at 118. It should be noted that the mere presence or absence of an integration clause in a contract is not necessarily dispositive. Rather, a comparison of both the alleged oral and written agreements must be undertaken and a determination made as to whether the parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject matter and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. *Mellon Bank v. First Union Real Estate*, *supra*, at 1405; *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 995 (3rd Cir.1987); *Gianni v. R. Russell & Co.*, *supra*, 126 A. at 792.

 In the case at bar, the Defendants principally rely on two paragraphs, which appear in each Plaintiff's employment agreement as support for their proposition that any and all other and prior agreements between the parties (including those concerning the charging of expenses and payment of regular cash distributions) were "integrated" into the written employment documents. Those paragraphs, which are variously numbered 3(e) and 9 or 10 read as follows:

> "(e) *Entire Compensation.* The compensation provided for in this Agreement shall constitute full payment for the services to be rendered by the Employee to the Employer hereunder.

. . . . .

> 9. *Supercedes Other Agreements.* This Agreement supercedes and is in lieu of any and all other employment arrangements between the Employee and the Employer but shall not supercede any existing confidentiality or nondisclosure agreements between the Employee and the Employer."

Noticeably absent from these paragraphs is true integration language indicating that the written employment agreements set forth in full the terms of the parties' undertaking or that the written agreements constitute the entire agreement of the parties. *See, e.g.: Wood v. R.R. Donnelley & Sons, Co.*, 888 F.2d 313, 315 (3rd Cir.1989). Thus, while we find the foregoing clauses insufficient, in and of themselves, to effectively integrate any and all other or oral agreements between the Plaintiffs and Defendants, our inquiry does not end here. Instead, we next consider and compare the scope and contents of the alleged oral contracts with those of the written.

Specifically, the agreements under which Plaintiffs seek relief and which Defendants are challenging involve the purported oral promises by Defendants that the Plaintiffs would receive cash distributions from their shares of the profits of the general partners in which they had equity interests on a regular basis and that either no or very minimal expenses would be charged to the general partners over and above the management fees charged by HHS. On these points there is extensive deposition testimony from all three Plaintiffs and Defendant Tomlin that the issues of whether, how many and what types of expenses other than the management fees were to be charged to the general partners was the subject of much discussion and negotiation before the written employment agreements were finalized. (*See, e.g.* Deposition of Don P. Greenberg, M.D. dated 10/05/92, pp. 89–92, 103–104, 125; Deposition of Oliver B. Tomlin, III, dated 10/06/92, pp. 97–101; Deposition of Donald Lieberman, M.D., 9/10/92, pp. 93–112). Likewise, the parties discussed including clauses in the contracts outlining when dividends from their equity interests in the general partners would be paid. In all cases, Defendant Tomlin refused to include either an expense cap or set a time certain for the distributions of

profits giving as his reasons therefore that HHS and the partnerships could suffer adverse tax consequences and that such clauses could hinder potential future public stock offerings. (Depositions of Don Greenberg, 10/05/92, pp. 92–93, 188–189; Tomlin Deposition of 10/06/92, pp. 90–91, 100–101, 114–115, 134–135; Brewster Deposition of 8/26/92, pp. 57–63; Lieberman Deposition of 9/11/92, pp. 70–72). In all three cases, the Plaintiffs consulted with counsel and eventually accepted that no expense limitations or timetable for cash distributions would be included in their written employment contracts. (*See, e.g.:* Lieberman Deposition of 9/11/92, pp. 71–72; Brewster Deposition of 8/26/92, pp. 251–252, 260–261; Greenberg Deposition of 10/05/92, pp. 92–93). Accordingly, this Court now concludes that the terms of the written employment agreements, particularly those clauses which address the general partners and stock options and equitable interests therein control notwithstanding their silence on the matters of expenses and time for cash distributions. Indeed, it is clear that the parties intended that no mention would be made of these issues in the written documents and we therefore find that the Defendants' invocation of the parol evidence rule to now bar such discussion is proper. Summary judgment shall be entered with respect to Count IV of both Brewster's and Greenberg's Amended Complaints and Count V of Lieberman's Amended Complaint.

2. *Sufficiency of the Proof as to Plaintiffs' Common Law Fraud, Misrepresentation and Estoppel Claims*

The Defendants next assert that judgment should now be entered in their favor as a matter of law with respect to the Plaintiffs' claims against them under the common law theories of fraud, misrepresentation and estoppel on the grounds that Plaintiffs have no evidence of Defendants' fraudulent intent nor can they prove that they reasonably relied upon the various promises and representations purportedly made to them by the De-

fendants about the anticipated profits of the general partners.[6] What's more, Defendants argue, their so-called representations were, at most, promises to do future acts and cannot act as the foundation for valid causes of action under either Maryland or Pennsylvania jurisprudence.

 It is generally recognized that misrepresentation may be either fraudulent or negligent in nature and that the elements of fraud and fraudulent misrepresentation are essentially identical. To prove either or both torts, a plaintiff must, by clear, precise and convincing evidence, prove (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient on the misrepresentation and (5) damage to the recipient as the proximate result. *Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 296 (3rd Cir.1991); *Browne v. Maxfield,* 663 F.Supp. 1193, 1202 (E.D.Pa.1987); *Smith v. Rosenthal Toyota, Inc.,* 83 Md.App. 55, 573 A.2d 418, 421, *cert. denied,* 320 Md. 800, 580 A.2d 219 (1990); *Rizzo v. Michener,* 401 Pa.Super. 47, 584 A.2d 973, 980 (1990), *app. denied,* 528 Pa. 613, 596 A.2d 159 (1991). Although it is well established that fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth or suggestion of what is false whether it be by direct falsehood or by innuendo, speech, silence, word of mouth or look or gesture, it is equally clear that a promise to do something in the future and the failure to keep that promise, is *not* fraud. Rather, a cause of action for fraud requires that a misrepresentation of a past or present material fact be pleaded and proved. *Moser v. DeSetta,* 527 Pa. 157, 589 A.2d 679, 682 (1991); *Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Super. 56, 563 A.2d 1182 (1989) *app. denied,* 524 Pa. 629, 574 A.2d 70 (1990); *Ward Development Co. v. Ingrao,* 63 Md. App. 645, 493 A.2d 421 (1985). Moreover, it is up to the trial judge to decide as a matter

---

**6.** Insofar as the parties agree that Pennsylvania substantive law should be applied to both Dr. Lieberman and Mr. Brewster's common law claims, that Maryland law applies to Dr. Greenberg's and that the laws of these two states as to fraud, misrepresentation and estoppel are essentially identical, we see no reason to here address Defendants' argument concerning the conflicts of laws provisions of the states involved.

of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case. *Mellon Bank Corp. v. First Union Real Estate, supra*, 951 F.2d at 1409; *Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23, 26 (3rd Cir.1981).

Estoppel, in turn, is an equitable doctrine invoked to avoid injustice in particular cases. While a hallmark of the doctrine is its flexible application, it is nevertheless clear that in order to prevail thereunder, a party must show (1) a material misrepresentation, (2) reasonable reliance upon that representation, and (3) damage resulting from that representation. *Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3rd Cir.1991). *See Also: Maryland National Bank v. United Jewish Appeal Federation, Inc.*, 286 Md. 274, 407 A.2d 1130 (1979). When these factors are shown to coalesce, the reasonable expectations of the party asserting the doctrine will be protected and those against whom estoppel is asserted will be prevented from taking a position that is inconsistent with that previously taken upon which the plaintiff relied. *See: Curran v. Eberharter*, 361 Pa.Super. 65, 521 A.2d 474, *app. denied*, 515 Pa. 613, 530 A.2d 867 (1987).

Examining the evidence produced in this action in the manner most favorable to the Plaintiffs, we reiterate that Drs. Greenberg, Lieberman and Brewster also premise their common law causes of action upon those statements made by Oliver Tomlin before employment agreements were finalized concerning how the limited partnerships would work, how profitable they were expected to be and when, how often and how much the cash payouts from the general partners would be to the individual general partners. While the record is clear that at the time Tomlin made these statements, most of the limited partnerships in question had not yet been developed, it appears that at least one

of them, Total Care I (whose general partner was All-Care), had been operational since at least 1986. (See Deposition of Donald H. Lieberman, M.D., 9/10/92, pp. 64–67). Since there is also testimony that all of the limited partnerships are structured in the same fashion as TC–I and that Mr. Tomlin also told Dr. Greenberg that cash distributions would be calculated and paid to him exactly as they had been for Dr. Lieberman, we conclude that there is sufficient evidence that Tomlin *may* have known that these alleged statements concerning regular cash distributions and calculations of a general partners' profits were false at the time that he made them thus rendering inapplicable now Defendants' argument that they were nothing more than mere promises to do future acts.[7] (*See:* Deposition of Augustus Robbins, 8/27/92, pp. 102–104; Deposition of Don P. Greenberg, M.D., 10/05/92, pp. 188–189; Deposition of O.B. Tomlin, 10/06/92, pp. 114–115).

Nevertheless, after carefully reading and rereading the record in this matter, this Court is unable to distinguish this case from the rationale presented by the Third Circuit Court of Appeals in *Mellon Bank Corp. v. First Union Real Estate, supra* and thereby find that sufficient evidence of either reasonable reliance or fraudulent intent exists to justify submitting Plaintiffs' common law claims to a jury. In that case, in addition to trying to introduce parol evidence to show that prior to their execution of certain loan and lease documents, the parties had orally agreed that the defendant would not prepay the loan which it was taking with the plaintiff bank, the plaintiff also sought to prove a claim for fraudulent misrepresentation. Turning to the Restatement (Second) of Torts § 530(1) (1977) which states "[a] representation of the maker's own intention to do or not do a particular thing is fraudulent if he does not have that intention," the *Mellon* court observed:

"To come within Restatement (Second) § 530, the Bank had to produce evidence that at the time Schofield made his alleged oral promises he (1) intended to prepay the

---

**7.** Indeed, it has been held that "a statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." *Mellon Bank Corp. v. First Union Real Estate, supra*, at 1410; *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172, 1175 (1977).

mortgages *and* (2) had no intention of making other arrangements to "protect" Mellon ... Non-performance does not by itself prove a lack of present intent." (emphasis in original; citations omitted).

951 F.2d at 1410.

The *Mellon Bank* case is also instructive on the issue of reasonable or justifiable reliance. Under that case and the case law cited above, it is truly well-settled that to avoid summary judgment on a fraud/fraudulent misrepresentation claim and to establish estoppel, sufficient evidence must be produced from which a reasonable jury could find that reliance upon the alleged promise was justified. *See Also: Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983). Although there are no hard and fast definitions of what constitutes reasonable reliance, the degree of sophistication of the parties and the history, if any, behind the negotiation process are relevant factors in ascertaining reasonableness. Turning again to the Restatement (Second) of Torts at Section 544, the *Mellon* court noted:

> "The Restatement (Second) of Torts § 544 defines reliance as follows:
>
> The recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out.
>
> . . . . .
>
> The agreements in this case are between sophisticated businessmen. Mellon Bank is a major banking institution. After consulting with counsel at all stages of the transaction and closing on detailed written documents, it is not reasonable for Mellon to rely on oral promises that directly contradict the written agreements between the parties."

951 F.2d at 1412.

Similarly, the United States District Court for the District of Maryland observed in *G & M Oil Company v. Glenfed Financial Corp.,* 782 F.Supp. 1085 (D.M.D.1991) in granting summary judgment for the defendant on the negligent misrepresentation and estoppel claims which purportedly arose after the defendant denied the plaintiff's commercial capital loan application:

> "Even assuming that Glenfed's statements did constitute a promise, in order to recover under a theory of promissory estoppel, G & M 'must establish that its reliance on the defendant's promise was reasonable.' ... As pointed out by Glenfed, G & M and its officers were very much aware of the uncertain prospects of any loan and knew that the conditions with respect to the loan had not been fulfilled. Moreover, G & M was an experienced sophisticated business that was represented by undoubtedly competent counsel throughout the loan application process. In recognition that sophisticated business entities don't enter into multimillion dollar transactions without a comprehensive writing, G & M's counsel sought an unconditional commitment letter from Glenfed. No such letter was ever executed by Glenfed. In light of these circumstances, the Court holds that G & M clearly could not reasonably rely on any alleged promise by Glenfed.

(citations omitted)

In so holding, the Glenfed court was guided by Comment (b) to the Restatement (Second) of Contracts § 90, which provides that: "The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought [and] on the formality with which the promise is made."

Thus, reliance must be based on both the promises of the party to be bound by the estoppel, not simply on the judgment of the promisee. *Josephs v. Pizza Hut of America, Inc.,* 733 F.Supp. 222, 227 (W.D.Pa.1989), *aff'd without opinion,* 899 F.2d 1217 (3rd Cir.1990).

At bar, all three of the Plaintiffs and the defendant Tomlin testified at length that the negotiations leading to the consummation of the employment agreements were extensive and that Tomlin would not budge from his refusal to incorporate in the agreements

any mention of a limit on the expenses to be charged to the general partners or a schedule or time certain for the cash payouts from the stock/equity interests. (Depositions of Don P. Greenberg, M.D., 10/05/92, pp. 89–93, 103–104, 125, 188–189; Deposition of Donald Lieberman, M.D., 9/11/92, pp. 70–72, 93–112; Deposition of Robert Brewster, 8/26/92, pp. 57–63; Deposition of Oliver B. Tomlin, III, 10/06/92, pp. 90–91, 97–101, 114–115, 134–135). All of the Plaintiffs are well-educated, sophisticated businessmen who were assisted and represented by counsel during the negotiation process and before they entered into their original employment agreements. (*See:* Deposition of Don P. Greenberg, M.D., 10/05/92, pp. 6–16, 91–92; Deposition of Robert Brewster, 8/26/92, pp. 8–12, 64–65, 260–261; Deposition of Donald Lieberman, M.D., 9/11/92, pp. 70–72, 123–125).[8] In light of this testimony and the historical background of this case, we cannot find that the Plaintiffs' reliance on Tomlin's oral representations made on behalf of HHS was reasonable or justifiable.

Plaintiffs' therefore cannot meet the clear and convincing evidence standard necessary to enable a jury to find in their favor on those counts in the amended complaints charging fraud, misrepresentation and estoppel. Accordingly, summary judgment will be entered in favor of the Defendants with respect to Counts V, VI and VII of Dr. Greenberg's and Mr. Brewster's amended complaints and Counts VI, VII and VIII of Dr. Lieberman's amended complaint.[9] *See Also: Carlson v. Arnot–Ogden Memorial Hospital,* 918 F.2d 411 (3rd Cir.1990).

**8.** In fact, Dr. Greenberg had earned an M.B.A. from the Wharton School of the University of Pennsylvania and had set up his own business prior to joining HHS. Mr. Brewster had attended law school at Southern Methodist University for two years and had extensive prior experience working in a similar fashion to what he was hired to do for HHS. Dr. Lieberman, in turn, had been an investor and had worked with HHS for several years before formally becoming an HHS employee.

**9.** In light of our ruling on these three claims, we see no need to address Defendants' arguments that Dr. Lieberman was barred from bringing these causes of action by the statutes of limitations. Furthermore, to the extent that Count VI

### 3. Application of the Statute of Limitations to Dr. Lieberman's Breach of Oral Contract Claim

In addition to all of the foregoing, the Defendants move for summary judgment in their favor on Count IV of Dr. Lieberman's amended complaint giving as the reason therefor that this cause of action is time-barred.

▮ 42 Pa.C.S.A. § 5525 [10] requires that commencement of a civil action for breach of an oral contract be accomplished within four years. Where, however, through intentional or unintentional fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry into a prospective cause of action or where a contractual cause of action is a continuing one, the statute of limitations will be tolled. *See Generally: Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987); *William B. Tenny Builder & Developer v. Dauphin Deposit Bank & Trust Co.,* 302 Pa.Super. 342, 448 A.2d 1073 (1982). Although whether the statute of limitations has run on a claim is usually a question of law for the judge, where the issue involves a factual determination, such as what is a reasonable period, the issue is for the jury. *Amodeo v. Ryan Homes, Inc.,* 407 Pa.Super. 448, 595 A.2d 1232 (1991), citing *Smith v. Bell Telephone Co.,* 397 Pa. 134, 142, 153 A.2d 477, 481 (1959).

▮ Applying these principles to the instant case, we find that issues of material fact remain as to whether and when Oliver Tomlin told Dr. Lieberman that the expenses which were charged by HHS to All–Care for

of Dr. Lieberman's amended complaint endeavors to raise fraudulent inducement (a fact which this Court questions in view of the fact that the said Plaintiff is claiming damages—not rescission of the subject contract), we repeat our finding that there has not been an adequate showing of reasonable reliance. *See:* cases cited *supra.* Accordingly, summary judgment is also entered in the defense's favor on the claim (if any) of fraudulent inducement.

**10.** Federal Courts sitting in diversity cases must apply the substantive law of the states in which they sit and statutes of limitations are considered substantive. *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 552 (3rd Cir.1985).

TC–I and TC–II were only due to the high start-up costs for these partnerships and would not continue so as to justify Dr. Lieberman's failure to commence suit until October, 1991. (See Deposition of Dr. Lieberman, 9/10/92, pp. 91–123). We shall therefore refrain from entering judgment in favor of the Defendants on this claim at this time.

. 4. *Entitlement of Plaintiffs Brewster and Lieberman to Additional Stock in the Universal and Delaware Valley General Partners*

Finally, Defendants submit that judgment should be entered in their favor in no amount with respect to the claims by Dr. Lieberman and Mr. Brewster to additional shares in the stock of Universal and Delaware Valley. Our review of the entire record in this case reflects that the deposition testimony and affidavits produced by the parties on this issue are entirely contradictory. So saying, we find that there remain factual and credibility issues, the resolution of which must be made by a jury. Defendants' motion as to these claims is therefore denied.

The following order is hereby entered.

### ORDER

AND NOW, this 11th day of March, 1993, upon consideration of the Motion of Defendants Oliver B. Tomlin and Home Health Systems, Inc. for Summary Judgment, it is hereby ORDERED that the said Motion is GRANTED IN PART and DENIED IN PART and judgment is hereby entered in favor of the Defendants and against the respective Plaintiffs in no amount on Counts II and III of all three of the Plaintiffs' Amended Complaints, and on Counts IV, V, VI and VII in Brewster and Greenberg's Amended Complaints and on Counts V, VI, VII and VIII of Lieberman's Amended Complaint.

In all other respects, the motion is DENIED.