The TRAVELERS INSURANCE CO., Plaintiff,

v.

PAOLINO MATERIAL & SUPPLY, INC. and Joseph Paolino & Sons, Inc., Defendants.

No. 94–CV–2501.

United States District Court, E.D. Pennsylvania.

Nov. 6, 1995.

Edward J. O'Brien, Olin, Neil & Haltrect, West Chester, PA, for Plaintiff.

Michael K. Molinaro, Law Offices of Michael K. Molinaro, Broomall, PA, for Defendants.

## DECISION

JOYNER, District Judge.

This diversity case was tried before this Court in a non-jury trial on April 27, 1995. The plaintiff is the Travelers Insurance Company (the "Travelers"), a Connecticut corporation seeking to recover a judgment of over $500,000 in unpaid premiums and interest from the defendants, Paolino Paving & Supply, Inc. and Joseph Paolino & Sons, Inc. (collectively, the "Paolinos"), two related Pennsylvania companies engaged in the construction business. For their part, the Paolinos have brought a counterclaim sounding in contract. The parties have submitted their proposed findings of fact and conclusions of law and the matter is now ripe for decision. Accordingly, we now issue the following factual findings and conclusions of law, pursuant to Fed.R.Civ.P. 52.

### FINDINGS OF FACT

1. The Paolinos are engaged in the business of building and resurfacing roads and bridges. (Stip. Facts, p. 1–2).

2. The Paolinos are required by law to maintain worker's compensation insurance. (Stip. Facts, p. 2).

3. In the three years prior to the years relevant to this lawsuit, the paolinos had paid annual premiums ranging from $235,359 to $458,553 for worker's compensation insurance. (Tr., pp. 118–19).

4. After a number of unsuccessful attempts to secure worker's compensation insurance in the voluntary market, the Paolinos applied to the Pennsylvania Compensation Rating Bureau (the "PCRB") for involuntary worker's compensation insurance on October 9, 1990. (Stip. Facts, p. 2).

5. In their application, the Paolinos estimated that their premium would be $198,665, using an experience modification factor ("EMF") of 1.687. (Defendants' Ex. 2).

6. The EMF is an underwriting, actuarial figure computed by the PCRB that considers the insured's claims history and affects the amount of the premium. (Stip. Facts, p. 3).

7. In the three years prior to the years relevant to this lawsuit, the worker's compensation policies the Paolinos held contained EMFs ranging from 1.017 to 2.186. (Tr., pp. 113–15).

8. The Paolinos used an EMF of 1.687 because they knew that the new EMF, to become effective on October 15, 1990, had yet to be promulgated. The Paolinos were also aware that their premium would be adjusted once the actual EMF was published. (Defendants' Ex. 3).

9. The PCRB assigned the Paolinos' risk to the Travelers. The Travelers then issued a policy of involuntary worker's compensation insurance to the Paolinos. (Stip. Facts, p. 3).

10. The term of the policy ran from October 15, 1990 to October 15, 1991. The policy was renewed for a one-year term on October 15, 1991. (Stip. Facts, p. 3; Tr., p. 4–6).

11. The second policy provided coverage until it was canceled on January 16, 1992. (Tr., p. 20).

12. The policies contained the following language:

E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classification covered by this policy.

.    .    .    .    .

G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by the audit will be used to determine the final premium. Insurance rate service organizations have the same rights we have under this provision.

(Plaintiff's Ex. 6).

13. The total estimated premium for the first policy was $100,587. This figure was well below the amount the Paolinos anticipated because the Travelers inadvertently neglected to include the EMF in the estimate. (Defendants' Ex. 9; Stip. Facts, p. 3).

14. By October 17, 1990, two days into the initial policy period, the Paolinos realized, or should have realized, that the EMF for the 1990–91 policy would be 2.357. On that day, the Paolinos addressed a letter to the PCRB, as follows: "Please forward our Loss History File used to promulgate our 1990 mod of 2.357 to our insurance agent...." (Plaintiff's Ex. 24).

15. On June 14, 1991, the Travelers received notice from the PCRB that the Paolinos' EMF for the 1990–91 policy was 2.357. (Stip. Facts, p. 3; Plaintiff's Ex. 7).

16. The Travelers endorsed the policy and added the EMF to the policy on July 19, 1991. Thus, the Paolinos' premium was $464,772 for the initial policy period. (Stip. Facts, pp. 3–4; Plaintiff's Ex. 8; Tr., p. 61).

17. The Paolinos objected in writing to the application of the EMF. (Stip. Facts, p. 4).

18. On October 3, 1991, the Travelers sent a quotation for the 1991–92 period to the Paolinos. The estimate contained an EMF of 2.357. (Stip. Facts, p. 4; Plaintiff's Ex. 9).

19. On October 15, 1991, the policy was renewed for one year. The estimated premium for the 1991–92 policy was $149,673. (Stip. Facts, p. 4; Plaintiff's Ex. 10).

20. On November 12, 1991, the Travelers conducted an audit of the Paolinos' records pursuant to the policy. The audit resulted in a credit to the Paolinos' account for the first policy in the amount of $9,765. Thus, the total premium for the initial policy period was $455,007. (Stip. Facts, p. 4; Tr., p. 59).

21. The Paolinos made premium payments totalling $185,741 on the first policy. (Plaintiff's Ex. 12).

22. The Paolinos refused to make further premium payments in light of their dispute with the Travelers over the application of the 2.357 EMF to the first policy. (Defendants' Ex. 11).

23. Thus, the Travelers canceled the policy for non-payment of the premium, effective January 16, 1992. The notice of cancellation

assured the Paolinos that "[a]ny premium adjustment required by the policy will be made." (Defendants' Ex. 10).

## DISCUSSION

The Travelers contends that it is entitled to damages in the amount of $269,266 (the $455,007 earned premium minus the $185,741 in payments made by the Paolinos) arising from the first policy, plus $149,673 under the 1991–92 policy. Further, the Travelers asserts that it is entitled to 6 percent interest on the sum in the amount of $81,693.11, for a total of $500,632.11. The Paolinos, on the other hand, argue that they justifiably relied on the premium estimate figure of $100,587, and that the Travelers is estopped from asserting a higher premium amount. The Paolinos have also set forth a counterclaim, in which they contend that they are entitled to a rebate for the premium payments collected in excess of the premium estimate, or $85,154.

### A. The Travelers' Contract Claim

The parties do not dispute that they entered into a binding insurance contract. The only issue before the Court is whether the Paolinos can justify their non-performance. We can therefore resolve this claim by determining whether the facts presented warrant the invocation of some affirmative defense. The Paolinos raised a number of defenses in their answer, but the only defense they attempted to prove at trial was estoppel. The essence of the Paolinos' estoppel argument is that (1) they reasonably believed that the $100,587 figure was correct; (2) they relied on the $100,587 figure in formulating bids on various contracts; (3) contracts were awarded and work was performed under the assumption that their worker's compensation insurance costs would be $100,587; and (4) since the $100,587 figure was mistakenly presented to the them due to an oversight on the part of the Travelers, the Travelers is estopped from asserting some higher figure.

■ Estoppel is an equitable doctrine designed to prevent a party from acting in one manner after it has induced another to expect it to act in a different manner. *Home for Crippled Children v. Prudential Ins. Co.,*

590 F.Supp. 1490, 1503 (W.D.Pa.1984) (citing *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 435, 457 A.2d 502, 503 (1983)). Thus, when one by his acts, representations, or silence when he ought to speak out, induces another to believe certain facts, and the other reasonably believes those facts and justifiably relies on them to its detriment, the inducing party cannot deny the facts. *Id.* (citing *In re Estate of Tallarico,* 425 Pa. 280, 288, 228 A.2d 736, 741 (1967)). In order to make out an estoppel defense, a party must show (1) a material representation, (2) justifiable reliance on the representation, and (3) resulting damage. *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 (3d Cir.), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1993); *Greenberg v. Tomlin,* 816 F.Supp. 1039, 1055 (E.D.Pa.1993). Such a showing must be made by "clear, precise and unequivocal evidence." *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975).

■ Applying these principles to the instant case, we conclude that to the extent the Paolinos relied on the representation that the worker's compensation insurance premium would be $100,587, their reliance was unjustified. First, by the terms of the contract, the $100,587 figure was merely an estimate; the actual final premium would be determined only after an audit. Thus, the Paolinos could not reasonably have relied on the figure. Second, the Paolinos should have realized that the 1990 EMF was inadvertently omitted from the estimate. They were well aware from previous experience that the EMF was a key element in determining the premium price. *See Greenberg,* 816 F.Supp. at 1056 (degree of sophistication and business history are relevant factors in determining reasonableness). In submitting their application for insurance, the Paolinos themselves used the previous year's EMF of 1.687 to calculate the estimated premium. Indeed, in the three years prior to the time relevant to this lawsuit, the Paolinos had paid an annual premium as high as $458,553 for worker's compensation insurance, using an EMF of 2.186. In light of this history, the Paolinos' assertion that they reasonably believed the

premium figure would not contain an EMF rings hollow.

Finally, by October 17, 1990, just two days into the policy period and eight days after they had applied for insurance using an EMF of 1.687 to estimate the premium, the Paolinos knew that the EMF for the policy period would be 2.357. Thus, they should have realized that their premium would be substantially higher than they had estimated, and could not have reasonably relied on the lower figure to calculate their bids. For these reasons, we conclude that the Paolinos' reliance on the $100,587 figure was unjustified. As a result, we must reject their estoppel defense and award judgment to the Travelers in the amount of $269,266, representing the $455,007 earned premium minus the $185,741 in payments made by the Paolinos.

■ The Travelers also ask us to award it $149,673, which constitutes the estimated annual premium for the 1991–92 policy. As we found above, the Travelers canceled the 1991–92 policy on January 16, 1992 for non-payment of the premium. The notice of cancellation noted that the premium would be appropriately adjusted. Moreover, the Travelers points to no provision in the contract that entitles it to payment of the full premium in the event it cancels the policy during the policy term. Accordingly, we will award the Travelers a portion of the annual premium to compensate it for the 93 days of coverage it provided the Paolinos. Since no audit was conducted, we use the estimated figure as a baseline, and arrive at a figure of $38,031.65. Accordingly, we will enter judgment in favor of the Travelers in the total amount of $307,297.65, plus pre-judgment interest at the statutory rate. *Benefit Trust Life Ins. Co. v. Union Nat'l Bank,* 776 F.2d 1174, 1179 (3d Cir.1985).

B. *The Paolinos' Counterclaim*

The Paolinos' counterclaim is premised on its argument that it owes the Travelers no more than $100,587 for the 1990–91 policy, and that it is entitled to either a rebate for the funds it paid to the Travelers in excess of that amount or a set-off for the premiums charged in excess of the amount they paid. Since we have concluded that the Paolinos'

basic argument is meritless, however, we must necessarily reject their counterclaim. Accordingly, judgment will be entered in favor of the Travelers with respect to the Paolinos' counterclaim.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are of diverse citizenship and the amount in controversy exceeds $50,000.

2. By a preponderance of the evidence, the Travelers demonstrated that the Paolinos breached the insurance contract when it failed to make the required premium payments.

3. The Paolinos failed to establish an equitable estoppel defense.

4. The Travelers demonstrated that it incurred damages in the amount of $307,297.65 as a result of the Paolinos' breach.

5. The Paolinos failed to demonstrate that they are entitled to relief on their counterclaim.

An appropriate order follows.

### ORDER

AND NOW, this 6th day of November, 1995, following a non-jury trial in this matter and careful consideration of the parties' proposed findings of fact and conclusions of law, and for the reasons set forth in the preceding Decision, it is hereby ORDERED that:

1. VERDICT and JUDGMENT are entered in favor of Plaintiff and against Defendants in the total amount of $307,297.65, plus pre-judgment interest at the statutory rate.

2. VERDICT and JUDGMENT are entered in favor of Counterclaim Defendant in no amount on Defendants' Counterclaim.